# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA
## MOBILE DIVISION

KENDRICK MACK, RENICIA REED,
TRAYVOND COOPER, BRIAN
RUSSELL, DIAI RAHEEM, DAVID
BASSA, AND MARQUIESTA EVANS,

     Plaintiffs,

v.

UNITED PARCEL SERVICE, INC,

     Defendant.

)
)
)
)
)
)
)
)
)
)
)

Civil Action No.

**JURY TRIAL DEMANDED**

_____

## COMPLAINT

Plaintiffs, Kendrick Mack, Renicia Reed, Trayvond Cooper, Brian Russell, Diai Raheem, David Bassa, and Marquiesta Evans, file this complaint against United Parcel Service, Inc., and states as follows:

## INTRODUCTION

1.    Plaintiffs, Kendrick Mack, Renicia Reed, Trayvond Cooper, Brian Russell, Diai Raheem, David Bassa, and Marquiesta Evans (collectively, "Plaintiffs"), bring this action against their employer, United Parcel Service, Inc. ("UPS" or "Defendant"), for racial discrimination in violation of 42 U.S.C. § 1981. Plaintiff, Kendrick Mack, additionally, brings this action against UPS for racial discrimination pursuant to Title VII of the Civil Rights Act of 1964, as amended,

including the Civil Rights Act of 1991, 42 U.S.C. Section 2000(e), *et seq*. (hereinafter "Title VII").

2.      Plaintiffs, all Black employees of UPS, have been subject to ongoing, systemic, and unlawful racial discrimination during their employment at UPS. Despite years of loyal service, they have faced discriminatory treatment in the form of unjustified terminations, denials of promotions, pay inequities, retaliatory actions, and exclusion from critical opportunities, all based on their race.

3.      Plaintiffs, all Black employees of UPS, endured a pervasive and hostile environment of racial discrimination under the supervision of Caleb Ashcraft, a white manager at the Mobile, Alabama facility. Ashcraft's discriminatory behavior was not isolated or occasional—it was systematic and deeply ingrained in the workplace culture he controlled. Ashcraft routinely treated Black employees, including the Plaintiffs, with blatant racial animus. His conduct ranged from unjust terminations and excessive scrutiny, to denying Black employees critical training opportunities, compensation, and promotions that were routinely granted to similarly situated white employees.

4.      Ashcraft's overt racial bias was evident in his day-to-day interactions with the Plaintiffs. Black employees were subjected to unfair accusations, denied the chance to explain their actions, and summarily punished for infractions that white employees committed without consequence. This unequal treatment created an

environment where Black employees feared retaliation, knowing they would face harsher discipline, exclusion from opportunities, and greater scrutiny simply because of their race. Ashcraft fostered an atmosphere of intimidation and hostility, where Black employees were marginalized and targeted based on their race.

5.      The pattern of discrimination perpetrated by Ashcraft reflects the systemic racial bias entrenched within the management culture at UPS. His discriminatory actions were not only tolerated by UPS, but were enabled through the company's inaction and failure to protect its Black employees from such treatment. Ashcraft's role as a senior supervisor gave him the authority to manipulate workplace policies to the detriment of the Plaintiffs, who were denied basic employment protections and opportunities afforded to their white counterparts.

6.      Defendant's conduct constitutes a pervasive pattern of racial discrimination that violates Plaintiffs' rights under federal law, specifically under Section 1981, which guarantees all persons the right to make and enforce contracts free from racial discrimination.

7.      As a result of Defendant's unlawful conduct, Plaintiffs have suffered substantial economic losses, emotional distress, and other damages, for which they seek redress from this Court.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action arises under federal law, specifically 42 U.S.C. § 1981.

9.     This Court has personal jurisdiction over Defendant United Parcel Service, Inc. ("UPS") because UPS conducts substantial and continuous business in the State of Alabama, including within the Southern District of Alabama. UPS maintains offices, distribution centers, and facilities in this District, employs individuals within this District, and regularly conducts business operations, including the management, processing, and delivery of packages. The acts and omissions giving rise to the claims in this action occurred within this District at the UPS facility located in Mobile, Alabama. Furthermore, UPS purposefully availed itself of the privileges of conducting business in Alabama and has established sufficient minimum contacts with the state such that the exercise of jurisdiction over UPS by this Court is reasonable and consistent with traditional notions of fair play and substantial justice.

10.     Venue is proper in the Southern District of Alabama under 28 U.S.C. § 1391(b) because Defendant UPS regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims occurred in this District, including the underlying acts of racial discrimination alleged in this action.

## **PARTIES**

11.     Plaintiff Kendrick Mack is a black male who resides in Mobile, Alabama. Mack has been employed by UPS for approximately seventeen years, most recently as a driver. He brings this action for racial discrimination under Section 1981.

12.     Plaintiff Renicia Reed is a black female who resides in Mobile, Alabama. Reed has been employed by UPS as a part-time local sort supervisor. She brings this action for racial discrimination under Section 1981.

13.     Plaintiff Trayvond Cooper is a black male who resides in Mobile, Alabama. Cooper has been employed by UPS for approximately seven years, most recently as a driver. He brings this action for racial discrimination under Section 1981.

14.     Plaintiff Brian Russell is a black male who resides in Mobile, Alabama. Russell has been employed by UPS for approximately five years, most recently as a driver. He brings this action for racial discrimination under Section 1981.

15.     Plaintiff Diai Raheem is a black male who resides in Mobile, Alabama. Raheem has been employed by UPS as a part-time on-road supervisor since January 2023. He brings this action for racial discrimination under Section 1981.

16.     Plaintiff David Bassa is a black male who resides in Mobile, Alabama. Bassa had been driving for UPS for over 20 years, until Ashcraft concocted a reason

to terminate Bassa's employment. Bassa brings this action for racial discrimination under Section 1981.

17.     Plaintiff Marquiesta Evans is a black female who resides in Mobile, Alabama. Evans has been employed by UPS since 2022 as a Local Sorter. She also has a pending EEOC charge of racial discrimination but brings this action under Section 1981. Evans has filed a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and will seek leave to amend this Complaint to assert Title VII claims once she receives a Right to Sue letter from the EEOC. Plaintiffs' Section 1981 claims are not subject to administrative exhaustion requirements, and thus, are properly before this Court at this time.

18.     Defendant United Parcel Service, Inc. is a corporation organized and existing under the laws of Delaware, with its corporate headquarters located at in Atlanta, Georgia. UPS is an employer engaged in interstate commerce, and at all times relevant to this Complaint, it employed Plaintiffs at its facilities in Mobile, Alabama.

## STATEMENT OF FACTS

19.     Plaintiffs' collective experience at UPS's Mobile, Alabama facility reveals a consistent pattern of racial discrimination and disparate treatment, all under the supervision of Caleb Ashcraft, a white business manager. Ashcraft routinely subjected black employees to more severe discipline, greater scrutiny, and fewer

opportunities for advancement compared to their white colleagues. This discriminatory conduct permeated the workplace, making it clear that race was a significant factor in employment decisions affecting black employees. The Plaintiffs, each of whom worked in various roles within UPS, were denied the fair and equal treatment they were entitled to, and instead faced racially motivated actions that undermined their careers, livelihoods, and workplace dignity.

20.    Each Plaintiff experienced not only direct acts of racial discrimination but also the ripple effects of a broader culture of racial inequality maintained by Ashcraft and tolerated by UPS management. The Plaintiffs were denied access to training, promotions, and career-enhancing opportunities that were systematically provided to their white counterparts. Despite their qualifications, tenure, and competence, the Plaintiffs were treated as second-class employees within a racially stratified workforce, where advancement and job security were closely tied to race.

**A. Kendrick Mack**

21.    Kendrick Mack is a black male who has been employed by UPS for approximately seventeen years, most recently as a Package Car Driver at the UPS facility located in Mobile, Alabama.

22.    Throughout Mack's tenure at UPS, he has been subjected to a pattern of racial discrimination, particularly under the supervision of Business Manager Caleb Ashcraft, a white male. Mack's discriminatory treatment ranged from being

passed over for seniority rights, wrongful suspensions, and terminations, to racial harassment tolerated by UPS management.

23.    In February 2024, Mack was wrongfully suspended and then terminated on February 12, 2024. On February 5, 2024, Mack had been suspended after Lisa Mercier, a white On-Road Package Supervisor, falsely accused him of making threats against Ashcraft. Mercier overheard a private conversation between Mack and his wife regarding her being disqualified from becoming a driver. The conversation took place while Mack was in the back of his truck, and Mercier overheard it from the front cab and misrepresented.

24.    Following his suspension, Mack was summoned to a meeting on February 12, 2024, with Ashcraft, Gray Vick (a white UPS supervisor), and other UPS representatives. During this meeting, Ashcraft accused Mack of engaging in a decade-long practice of improperly signing for customers' packages. Despite Mack's defense that contact with the customer was sufficient and signing was not required, Ashcraft used this pretext to terminate Mack's employment without proper investigation or adherence to UPS's progressive discipline policy.

25.    Mack's wrongful termination lasted for 17 weeks, during which time he was unemployed and not compensated. On May 28, 2024, Mack was reinstated after filing grievances, but he has yet to be reimbursed for the 17 weeks of lost wages

during his unlawful termination. This financial harm was compounded by the emotional distress Mack suffered during the suspension and termination.

26.   Mack had previously submitted multiple grievances to the union regarding discriminatory treatment, particularly concerning seniority issues. Despite his seniority over a white employee, Phillip Savick, who began driving after Mack, Savick was given preferential treatment and was granted seniority over Mack in violation of UPS's policies. This seniority manipulation directly affected Mack's ability to choose favorable routes and take personal time off (PTO). Despite Mack's documented grievances and supporting evidence showing his rightful seniority, UPS failed to correct this discriminatory practice.

27.   In the 17 months leading up to Mack's termination, Ashcraft disqualified or terminated at least five to seven Black drivers while promoting two white drivers to full-time positions. This disproportionate treatment of Black drivers demonstrates a clear racial bias in Ashcraft's decisions concerning employment opportunities and discipline.

28.   Mack was further targeted after he and other Black employees reported an incident in which a white employee, William "Bill" Preston Ezell, used a racial slur directed at a Black supervisor, Orlando Bethel. Despite assurances from management that the issue would be addressed, no disciplinary action was taken against Ezell. Instead, Ezell resigned and later assumed a prominent role as the

president and business agent of Teamsters Local Union No. 991, representing UPS employees, including Mack.

29.    The combination of Ashcraft's discriminatory actions, UPS's failure to properly investigate Mack's grievances, and the toleration of racial slurs and discriminatory employment practices fostered a racially hostile work environment at UPS. Despite Mack's long and loyal service to the company, he was consistently treated less favorably than similarly situated white employees, in direct violation of 42 U.S.C. § 1981 and Title VII.

**B. Renicia Reed**

30.    Renicia Reed is a Black female who was employed by UPS as a Local Sort Supervisor at the UPS facility located at 1909 Wolf Ridge Road, Mobile, Alabama. Her responsibilities included overseeing Last Look Air Recoveries (LLAR) and international air packages, ensuring the timely processing and compliance with regulatory requirements. Reed was paid $21.05 per hour.

31.    Reed's tenure at UPS was marked by a pattern of racial discrimination and disparate treatment under the supervision of Caleb Ashcraft, a white Business Manager, and William Plybon, a white full-time Local Sort Supervisor. Reed was systematically denied access to critical training opportunities, subjected to retaliatory actions, and eventually terminated under discriminatory circumstances.

32.   In August 2023, UPS conducted a training class essential for maintaining certification to supervise air packages, including international and hazardous materials. Despite Reed's primary responsibility for managing these packages, Ashcraft and Plybon chose to send Andrew Dreyer, a white Local Sort Supervisor with lesser responsibilities for air packages, to the training instead of Reed. Dreyer's role focused primarily on loading operations, making him less qualified for the training.

33.   A second opportunity for the same training arose in October 2023. Reed directly requested to attend the class, knowing its importance for her job. However, once again, Ashcraft and Plybon denied her request, sending Dreyer in her place. Randall Westbury, who was overseeing the training, expressed confusion about why Dreyer was being sent instead of Reed. Westbury even communicated this to Reed in an email exchange, confirming that Plybon had directed Dreyer to attend over Reed.

34.   Reed's exclusion from these training opportunities not only denied her the certifications necessary for her job but also stunted her professional growth. Her white counterparts, who were less qualified, received the training and the associated career benefits, while Reed was systematically denied access based on her race.

35.     Reed's relationship with her supervisors deteriorated further when she was involved in a dispute with Kristin Herring, a white female co-supervisor. On December 15, 2023, Reed and Herring had an argument during a meeting, which escalated after Herring insulted Reed by calling her a "Chia Pet." Despite Herring's instigation, Plybon blamed Reed for the altercation and blocked her from leaving the meeting. Once allowed to leave, Reed was told to take the rest of the night off.

36.     Following this incident, Reed was suspended with pay. She was informed that she would remain on suspension until further notice. Despite numerous attempts to follow up with Ashcraft and Plybon regarding her employment status, Reed's calls were ignored. Finally, on January 19, 2024, Reed was officially terminated from UPS, with the company citing the incident with Herring as the reason for her dismissal.

37.     Reed's termination was racially motivated and retaliatory. Herring, who instigated the conflict, faced no consequences, while Reed, a Black supervisor, was blamed and terminated. Additionally, Reed had repeatedly raised concerns about how her job responsibilities were being undermined by Herring, but those concerns were ignored by management.

38.     Following her termination, Reed was unable to secure employment until June 26, 2024, when she began working as a leasing agent at The Vinings, earning significantly less compared to her UPS salary.

### C. Trayvond Cooper

39.     Trayvond Cooper is a Black male who has been employed by UPS for approximately seven years. For the last two years of his employment, Cooper worked as a driver at the UPS facility located at 1909 Wolf Ridge Road, Mobile, Alabama.

40.     On or about June 8, 2023, Cooper was called into the office of the Business Manager, Caleb Ashcraft, a white male, and falsely accused of intentionally failing to deliver a package assigned to his delivery route. Ashcraft claimed that the package was found at the UPS warehouse after being marked as delivered, and he terminated Cooper's employment on the spot.

41.     Cooper had no prior warning or indication of any issue with his performance, and a check audit of his package car had been conducted the day before his termination by full-time local sort supervisor William Plybon, who found no violations in Cooper's delivery performance.

42.     Following his termination, Cooper immediately filed a grievance with his union to contest the termination as unjustified. A grievance hearing was held on or about July 5, 2023.

43.     During the grievance hearing, Ashcraft was unable to provide any evidence to support his claim that Cooper had failed to deliver the package. When

Ashcraft realized he had no evidence to support the accusation, he attempted to introduce new, unrelated allegations against Cooper to justify his termination.

44.    After the hearing, Cooper's employment was reinstated, but he had already been out of work for approximately five weeks without pay due to the false accusation and wrongful termination by Ashcraft.

45.    Cooper personally knows of white UPS drivers who have committed similar or worse delivery errors, such as failing to deliver packages or intentionally marking packages as delivered, but these drivers were not terminated. Instead, they received lesser disciplinary measures or no punishment at all.

46.    Cooper's termination was motivated by racial discrimination, as similarly situated white drivers were treated more favorably. Cooper's termination, the baseless accusations made against him, and the delay in his reinstatement were part of a discriminatory pattern of unequal treatment of Black employees by UPS.

47.    The wrongful termination caused Cooper significant economic harm, as he was deprived of income for approximately five weeks. The discriminatory treatment also caused Cooper emotional distress, as he feared continued discrimination or retaliation upon returning to work.

48.    Based on these facts, Cooper alleges that UPS discriminated against him based on his race in violation of 42 U.S.C. § 1981 by wrongfully terminating

his employment and treating him less favorably than similarly situated white employees.

**D. Brian Russell**

49.  Brian Russell is a Black male who has been employed by UPS for approximately five years. He has worked as a driver for the last three and a half years at the UPS facility located at 1909 Wolf Ridge Road, Mobile, Alabama.

50.  In May 2023, Russell was called into the office of the Business Manager, Caleb Ashcraft, a white male. Ashcraft accused Russell of intentionally failing to check on a business for a pickup that was on his delivery route, a violation of UPS work methods.

51.  Although UPS policy generally prescribes a warning or lesser disciplinary action for such infractions, Ashcraft immediately terminated Russell's employment without issuing a warning letter or following the usual progressive discipline process.

52.  Russell had, in fact, followed the instructions previously given to him by two of his driver supervisors before Ashcraft became the Business Manager at the Mobile facility. Despite following these instructions, he was still terminated.

53.  On or about May 23, 2023, Russell filed a grievance with his union, contesting his termination as unjustified and discriminatory. He had to attend two separate grievance hearings to resolve the matter—one held locally at his UPS

facility, and another held in Daytona Beach, Florida, which required him to cover his own travel and lodging expenses.

54.    At both grievance hearings, Russell explained that he had followed the instructions given to him by his supervisors and had not willfully violated any UPS policies. After the hearings, Russell's employment was reinstated, but he had been out of work for approximately two months without pay due to Ashcraft's wrongful termination decision.

55.    Despite being reinstated to his position, Russell did not receive any back pay for the two months he was unjustly out of work, causing him significant financial harm.

56.    Russell is personally aware of white UPS drivers who failed to check businesses for pickups on their delivery routes, as he was accused of doing, but who were not terminated. Instead, these drivers were given warnings or other minor disciplinary actions.

57.    Russell's termination was racially motivated, as he was treated more harshly than similarly situated white drivers. The immediate termination, the lack of progressive discipline, and the failure to compensate him for lost wages are part of a broader pattern of racial discrimination by UPS.

58.     The wrongful termination and delay in reinstatement caused Russell significant financial harm and emotional distress. He also fears future discrimination and retaliation from Ashcraft due to his race.

59.     Based on these facts, Russell alleges that UPS discriminated against him based on his race in violation of 42 U.S.C. § 1981 by terminating him without cause, treating him less favorably than similarly situated white employees, and failing to compensate him for the period of his wrongful termination.

**E. Diai Raheem**

60.     Diai Raheem is a Black male who has been employed by UPS as a part-time On-Road Supervisor since January 2023 at the UPS facility located at 1909 Wolf Ridge Road, Mobile, Alabama.

61.     During the 2023 peak season, Raheem was asked by Business Manager Caleb Ashcraft, a white male, to work additional hours beyond his guaranteed 20 hours per week as a Flex Part-Time On-Road Supervisor. Despite working these extra hours at Ashcraft's request, Raheem was not compensated for the additional time.

62.     Raheem repeatedly raised concerns about the unpaid overtime with Ashcraft and Full-Time On-Road Supervisor Kylan Cotton, as well as with Human Resources, but his concerns were ignored, and he received no explanation or resolution.

63.     In January 2024, when Raheem sought clarity regarding the unpaid overtime, Ashcraft responded by threatening Raheem, stating that if he continued to pursue the issue, UPS would attempt to recover the so-called "overpaid" amounts. This threat was retaliatory and aimed at discouraging him from asserting his rights.

64.     Raheem was also denied an essential training opportunity when UPS Corporate selected him to attend the Master Driver Safety Training (MDST) class, a critical training for On-Road Supervisors. Despite being registered for the class, Ashcraft unjustly prohibited Raheem from attending, offering no valid reason other than "because I said so."

65.     Ashcraft's refusal to allow Raheem to attend the training was not only unjustified but also discriminatory. White On-Road Supervisors, including those with less experience than Raheem, were allowed to attend the MDST class, which is essential for the professional advancement of On-Road Supervisors.

66.     Raheem was further subjected to discriminatory treatment when, on June 29, 2024, Ashcraft directed a white On-Road Supervisor to order Raheem to load packages, a task typically performed by hourly employees and outside the scope of Raheem's duties as an On-Road Supervisor. Ashcraft specifically instructed Raheem to ensure that no hourly workers observed him performing this task, further highlighting the discriminatory nature of the directive.

67.     White On-Road Supervisors were not required to perform manual labor outside of their supervisory duties, and the directive to Raheem to perform such tasks was both discriminatory and demeaning.

68.     Raheem was systematically excluded from important operational meetings and denied access to critical resources necessary to perform his job, such as system logins and tablets routinely provided to white supervisors. Additionally, Raheem was denied custom branded UPS uniforms that were distributed to his white counterparts.

69.     These actions created a hostile and discriminatory work environment in which Raheem was consistently marginalized, denied the tools and opportunities necessary to succeed in his role, and subjected to tasks outside of his job scope—all while white supervisors were afforded better treatment.

70.     These actions were motivated by racial discrimination and retaliation, as similarly situated white supervisors were not subjected to the same adverse treatment. The failure to pay overtime, exclusion from training, and assignment of manual labor duties beyond his job description were all part of a broader pattern of racial discrimination at UPS.

71.     Based on these facts, Raheem alleges that UPS discriminated against him based on his race in violation of 42 U.S.C. § 1981 by denying him compensation,

training, and resources provided to white employees, and by subjecting him to demeaning and discriminatory work assignments outside of his job responsibilities.

**F. David Bassa**

72.    David Bassa is a Black male who has been employed by UPS as a driver for over 20 years at the UPS facility located at 1909 Wolf Ridge Road, Mobile, Alabama.

73.    Despite his extensive tenure and experience with UPS, Bassa was wrongfully terminated by Business Manager Caleb Ashcraft, a white male. Bassa was the first Black driver terminated by Ashcraft, and his termination was racially motivated.

74.    Prior to his termination, Bassa was not given any formal warning or notice of the allegations against him. UPS policy generally requires progressive discipline, including verbal and written warnings, before an employee is terminated. However, Ashcraft bypassed these steps and terminated Bassa without adhering to this policy.

75.    After Bassa returned to work following his unlawful termination, he experienced continued harassment and discrimination from Ashcraft and other white UPS supervisors. Bassa was frequently followed by supervisors, sent messages about his performance, and threatened with additional disciplinary actions.

76.     On one occasion, Bassa noticed that he was being followed by Ashcraft and several supporting supervisors, including Gray Vick, who had represented the company during Bassa's termination process. Bassa pulled over to confront them, and four to five supervisors, including Ashcraft and Vick, approached his package car. They demanded that Bassa open his bulkhead door so they could inspect the inside of his truck.

77.     During this inspection, Ashcraft instructed Vick to take photographs of Bassa's shelves and to check his Driver Vehicle Inspection Report (DVIR). The next day, Bassa was issued two warning letters for alleged issues with his packages not being pulled up and his DVIR not being signed. However, the shelves photographed were not the area Bassa had been working from, and there was no requirement to check the DVIR daily.

78.     This excessive scrutiny and harassment by Ashcraft and his supervisors was racially motivated. White drivers were not subjected to the same level of invasive monitoring or retaliatory disciplinary actions.

79.     The harassment and discrimination have persisted since Bassa's return to work, creating a hostile and uncomfortable work environment. Bassa has been repeatedly targeted for minor or fabricated infractions, while similarly situated white drivers have not faced the same level of scrutiny or discipline.

80.    Based on these facts, Bassa alleges that UPS discriminated against him based on his race in violation of 42 U.S.C. § 1981 by wrongfully terminating him, subjecting him to disparate treatment, and creating a hostile work environment through continued harassment and unwarranted disciplinary actions.

**G. Marquiesta Evans**

81.    Marquiesta Evans is a Black female who has been employed by UPS since 2022 as a Local Sorter on the PM shift at the UPS facility located at 1909 Wolf Ridge Road, Mobile, Alabama.

82.    In or about October 2023, Evans began training for a promotion to the position of a Cover Driver, a more advanced role within UPS.

83.    On February 1, 2024, Evans was accused by Business Manager Caleb Ashcraft, a white male, of improperly returning packages to the package center that should have been delivered during her shift. As a result of this accusation, Evans was disqualified from her promotion to the Cover Driver position.

84.    Ashcraft's accusation was false, and it was based on discriminatory intent. Evans knows of a white male employee, Matthew Nations, who was also training for the Cover Driver position at the same time. Nations engaged in similar conduct, returning approximately 80 packages to the UPS facility that were not delivered. However, Nations was not disqualified from the promotion. He successfully became a Cover Driver despite his infractions.

85.    Defendant's decision to disqualify her was based on her race and sex, as her white male counterpart was not subjected to the same punishment for similar behavior. This disparate treatment highlights a pattern of discrimination within UPS where Black employees and female employees face harsher disciplinary actions than their white and male counterparts.

86.    Evans' disqualification was also in retaliation for her husband's prior complaints of racial discrimination against UPS. Her husband had previously filed both an EEOC charge and an internal grievance regarding racial discrimination at UPS, and Ashcraft's actions were in retaliation for these complaints.

87.    Despite her qualifications and completion of the necessary training for the Cover Driver position, Evans was denied the promotion based on discriminatory and retaliatory motives.

88.    Evans filed a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging race and sex discrimination, as well as retaliation. The EEOC charge remains pending, but Evans asserts her right to bring a claim under 42 U.S.C. § 1981 in this action based on the racial discrimination she experienced.

89.    As a result of the discriminatory and retaliatory disqualification, Evans has suffered economic harm due to the loss of the promotion, emotional distress, and a diminished sense of security in her employment at UPS.

90.     Based on these facts, Evans alleges that UPS discriminated against her based on her race in violation of 42 U.S.C. § 1981 by denying her a promotion, treating her less favorably than similarly situated white employees, and retaliating against her for her husband's prior complaints of racial discrimination.

## COUNT I
## Race Discrimination in Violation of 42 U.S.C. § 1981 and Title VII
## (Brought by Plaintiff Kendrick Mack)

91.     Plaintiff restates and realleges paragraphs 1 - 29 of this complaint, as if fully set forth herein.

92.     Section 1981 makes it unlawful to discriminate on the basis of race in the making and enforcing of contracts. 42 U.S.C. § 1981(a).

93.     Title VII of the Civil Rights Act of 1964 protects employees and job applicants, in pertinent part, from employment discrimination based on race.

94.     Plaintiff Kendrick Mack is a Black male, which makes him a member of a racial minority.

95.     Mack worked for UPS for approximately seventeen years, most recently as a driver.

96.     Defendant UPS, through its agents, including manager Caleb Ashcraft, intentionally discriminated against Mack on the basis of his race by terminating his employment on February 12, 2024, based on false accusations regarding improper package deliveries. Despite Mack's defense that he was complying with UPS policy,

his termination was carried out without proper investigation, violating the company's progressive discipline policy. Similarly situated white employees who committed similar or more severe infractions were not terminated.

97. Mack was also denied seniority rights in favor of a less qualified white employee, Phillip Savick, despite Mack's earlier completion of the necessary requirements. This manipulation of seniority allowed Savick to choose more favorable routes and receive job benefits to which Mack was entitled, further demonstrating UPS's intent to discriminate against Mack based on his race.

98. The discriminatory conduct described above concerned Mack's employment contract with UPS, including his right to fair treatment in discipline, seniority, and other employment benefits, in violation of 42 U.S.C. § 1981.

99. UPS's actions, including the wrongful termination, the manipulation of seniority rights, the failure to discipline a white employee for racial misconduct, and the disproportionate termination of Black employees, demonstrate intentional racial discrimination against Mack. UPS's discriminatory conduct concerned Mack's employment contract, depriving him of the right to fair and equal treatment in disciplinary actions, promotions, and other employment benefits.

100. As a direct result of UPS's unlawful conduct, Mack has suffered emotional distress, mental anguish, and a diminished sense of security in his employment at UPS.

## COUNT II
### Race Discrimination in Violation of 42 U.S.C. § 1981
### (Brought by Plaintiff Renicia Reed)

101.   Plaintiff restates and realleges paragraphs 1-20 and 30-38 of this complaint, as if fully set forth herein.

102.   Section 1981 makes it unlawful to discriminate on the basis of race in the making and enforcing of contracts. 42 U.S.C. § 1981(a).

103.   Plaintiff Renicia Reed is a Black female, which makes her a member of a racial minority.

104.   Reed worked for UPS as a part-time local sort supervisor responsible for managing air packages, including international and hazardous materials.

105.   In July 2023, UPS conducted a training class for supervisors responsible for processing air packages, which was essential for maintaining certifications required for Reed's job.

106.   Despite Reed's qualifications and her sole responsibility for managing air packages at her facility, Business Manager Caleb Ashcraft, a white male, selected a white co-supervisor, Andrew Dreyer, to attend the training in her place. Dreyer did not have responsibility for air packages, making him less qualified than Reed to attend the training.

107.   Reed's exclusion from this training opportunity denied her access to essential job-related skills and certifications, which interfered with her ability to perform her job duties and advance her career at UPS.

108.   The decision to send Dreyer instead of Reed to the training was intentional and based on race, as similarly situated white employees received opportunities that were denied to Reed.

109.   Reed was further subjected to disparate treatment in December 2023 when she was unfairly blamed for an altercation with her white female co-worker, Kristin Herring, and subsequently terminated on January 19, 2024. While Herring faced no consequences, Reed was suspended and then terminated, demonstrating that the disciplinary actions taken against her were racially motivated.

110.   UPS's discriminatory treatment concerned the benefits of Reed's employment contract, including equal access to training and professional development opportunities necessary to perform her job duties.

111.   As a direct result of UPS's unlawful conduct, Reed has suffered economic harm, emotional distress, and damage to her professional reputation.

### COUNT III
### Race Discrimination in Violation of 42 U.S.C. § 1981
### (Brought by Plaintiff Trayvond Cooper)

112.   Plaintiff restates and realleges paragraphs 1-20 and 39-48 of this complaint, as if fully set forth herein.

113.   Section 1981 makes it unlawful to discriminate on the basis of race in the making and enforcing of contracts. 42 U.S.C. § 1981(a).

114.   Plaintiff Trayvond Cooper is a Black male, which makes him a member of a racial minority.

115.   Cooper worked for UPS for approximately seven years, most recently as a driver.

116.   On or about June 8, 2023, Cooper was terminated by Caleb Ashcraft, a white male, after being falsely accused of intentionally failing to deliver a package. Cooper had received no prior warning or indication of any issue with his performance.

117.   Cooper filed a grievance contesting his termination, and a hearing was held in July 2023. During the hearing, Ashcraft was unable to provide any evidence to support the accusation against Cooper and attempted to introduce unrelated allegations to justify the termination.

118.   After the hearing, Cooper was reinstated to his position, but he had already been out of work for five weeks without pay.

119.   Cooper knows of similarly situated white drivers who engaged in more severe delivery errors but were not terminated. Instead, these drivers received lesser disciplinary measures or no punishment at all.

120.   Ashcraft's decision to terminate Cooper was based on race, as white employees who committed similar infractions were treated more favorably.

121.   UPS's wrongful termination of Cooper concerned his employment contract, depriving him of the right to work free from racial discrimination and to be treated equally with white employees.

122.   As a direct result of UPS's unlawful conduct, Cooper suffered financial harm, emotional distress, and a disruption in his employment.

## COUNT IV
### Race Discrimination in Violation of 42 U.S.C. § 1981
### (Brought by Plaintiff Brian Russell)

123.   Plaintiff restates and realleges paragraphs 1-20 and 49-59 of this complaint, as if fully set forth herein.

124.   Section 1981 makes it unlawful to discriminate on the basis of race in the making and enforcing of contracts. 42 U.S.C. § 1981(a).

125.   Plaintiff Brian Russell is a Black male, which makes him a member of a racial minority

126.   Russell worked for UPS as a driver for approximately five years

127.   In May 2023, Russell was terminated by manager Caleb Ashcraft, a white male, after being accused of failing to check on a business for a pickup on his route. Russell had followed the instructions previously given to him by two

supervisors, and UPS policy typically calls for lesser disciplinary action for such infractions

128.    Russell filed a grievance, and after attending two hearings, his employment was reinstated, but he was out of work for two months without pay.

129.    Similarly situated white drivers who committed similar or more severe infractions were not terminated and were instead given warnings or lesser discipline.

130.    Ashcraft's decision to terminate Russell was motivated by race, as he was treated more harshly than his white counterparts.

131.    UPS's wrongful termination of Russell deprived him of the benefits of his employment contract, including his right to fair and equal treatment in disciplinary matters.

132.    As a direct result of UPS's unlawful conduct, Russell has suffered financial loss, emotional distress, and a disruption to his employment.

**COUNT V**
**Race Discrimination in Violation of 42 U.S.C. § 1981**
**(Brought by Plaintiff Diai Raheem)**

133.    Plaintiff restates and realleges paragraphs 1-20 and 60-71 of this complaint, as if fully set forth herein.

134.    Section 1981 makes it unlawful to discriminate on the basis of race in the making and enforcing of contracts. 42 U.S.C. § 1981(a). The elements of a cause

of action for race discrimination under § 1981 are: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute.

135.   Plaintiff Diai Raheem is a Black male, which makes him a member of a racial minority.

136.   Raheem worked for UPS as a part-time On-Road Supervisor since January 2023.

137.   During the 2023 peak season, Raheem was asked to work additional hours beyond his regular schedule but was not compensated for the extra work. Despite raising the issue with manager Caleb Ashcraft, Ashcraft refused to address the unpaid overtime.

138.   Ashcraft also denied Raheem access to important training opportunities and required him to perform manual labor typically assigned to hourly employees, tasks outside of Raheem's supervisory role. White supervisors were not subjected to the same treatment.

139.   The failure to compensate Raheem and the denial of equal training opportunities were based on race and part of a broader pattern of racial discrimination within UPS.

140.   UPS's actions concerned Raheem's employment contract, depriving him of equal access to pay, training, and the proper performance of his supervisory duties.

141.   As a direct result of UPS's unlawful conduct, Raheem has suffered financial loss, emotional distress, and damage to his career advancement.

## COUNT VI
### Race Discrimination in Violation of 42 U.S.C. § 1981
### (Brought by Plaintiff David Bassa)

142.   Plaintiff restates and realleges paragraphs 1-20 and 72-80 of this complaint, as if fully set forth herein.

143.   Section 1981 makes it unlawful to discriminate on the basis of race in the making and enforcing of contracts. 42 U.S.C. § 1981(a).

144.   Plaintiff David Bassa is a Black male, which makes him a member of a racial minority.

145.   Bassa worked for UPS as a driver for over 20 years and was terminated by manager Caleb Ashcraft, a white male.

146.   Despite his long tenure, Bassa was terminated without being given any prior warnings or notice of the allegations against him. UPS policy typically requires

progressive discipline, including verbal and written warnings, before an employee is terminated, but Ashcraft bypassed these steps in Bassa's case.

147.  Bassa's termination was unjustified, and after returning to work following the termination, he experienced continued harassment from Ashcraft and other UPS supervisors. This harassment included being followed by multiple supervisors, receiving messages about his performance, and being subjected to unwarranted disciplinary actions.

148.  Similarly situated white drivers were not subjected to this level of scrutiny or harassment. Ashcraft's decision to terminate and harass Bassa was racially motivated and part of a pattern of unequal treatment of Black drivers.

149.  The termination and harassment concerned Bassa's employment contract with UPS, depriving him of his right to work free from racial discrimination and to receive fair and equal treatment in disciplinary matters.

150.  As a direct result of UPS's unlawful conduct, Bassa has suffered financial harm, emotional distress, and a hostile work environment.

## COUNT VII
### Race Discrimination in Violation of 42 U.S.C. § 1981
### (Brought by Plaintiff Marquiesta Evans)

151.  Plaintiff restates and realleges paragraphs 1-20 and 81-90 of this complaint, as if fully set forth herein.

152. Section 1981 makes it unlawful to discriminate on the basis of race in the making and enforcing of contracts. 42 U.S.C. § 1981(a).

153. Plaintiff Marquiesta Evans is a Black female, which makes her a member of a racial minority.

154. Evans has been employed by UPS since 2022 as a Local Sorter on the PM shift.

155. In or around October 2023, Evans began training for a promotion to the position of Cover Driver. On February 1, 2024, manager Caleb Ashcraft, a white male, accused Evans of improperly returning packages to the UPS facility that should have been delivered, which led to her disqualification from the promotion.

156. Evans denies the accusations, and she knows that a similarly situated white male employee, Matthew Nations, engaged in more severe misconduct by returning approximately 80 packages to the facility but was not disqualified from the Cover Driver promotion. Nations successfully became a Cover Driver despite his infractions.

157. The decision to disqualify Evans from the promotion was based on her race, as white employees who engaged in similar or worse conduct were not similarly punished.

158. Evans' disqualification was retaliatory, as her husband had previously filed an EEOC charge and an internal grievance alleging racial discrimination

against UPS. Ashcraft had a direct role in these retaliatory actions and stated that Evans would not advance at UPS due to her husband's complaints.

159.   The discriminatory and retaliatory disqualification from the promotion concerned Evans's employment contract with UPS, depriving her of the opportunity to advance in her career and to be treated equally with similarly situated white employees.

160.   As a direct result of UPS's unlawful conduct, Evans has suffered economic harm from the loss of the promotion, emotional distress, and damage to her career prospects.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Kendrick Mack, Renicia Reed, Trayvond Cooper, Brian Russell, Diai Raheem, David Bassa, and Marquiesta Evans respectfully request that this Court enter judgment in their favor and against Defendant United Parcel Service, Inc., and grant the following relief:

1.   A declaration that the actions and practices of Defendant violated 42 U.S.C. § 1981 and Title VII by engaging in unlawful racial discrimination and creating a hostile work environment against the Plaintiffs.

2.   A permanent injunction prohibiting Defendant from engaging in further discriminatory practices on the basis of race, and requiring

Defendant to implement policies, practices, and programs to eliminate racial discrimination and ensure equal employment opportunities for all employees.

3.    An award of compensatory damages in an amount to be determined at trial for lost wages, lost benefits, emotional distress, mental anguish, humiliation, and other non-economic losses resulting from Defendant's unlawful conduct.

4.    An award of punitive damages in an amount to be determined at trial to punish Defendant for its willful, wanton, and reckless conduct and to deter similar future conduct.

5.    An award of back pay for lost wages, salary, employment benefits, and other compensation lost as a result of Defendant's discriminatory actions, and front pay in lieu of reinstatement where appropriate.

6.    An award of reasonable attorney's fees, costs, and expenses incurred in this action pursuant to 42 U.S.C. § 1988(b) and (c), which allows for the recovery of attorney's fees in actions brought under 42 U.S.C. § 1981.

7.    An award of pre-judgment and post-judgment interest as allowed by law on all amounts awarded.

8.      Such other and further relief as the Court deems just and proper

under the circumstances.


Respectfully submitted on: October 7, 2024


By:


/s/ Ramon Martin
Ramon Martin (ASB-1597-X69W)

/s/ Lue Sullivan
Lue Sullivan

/s/ Eucellis Sullivan
Eucellis Sullivan



**Of Counsel**:

The Justice Law Firm, LLC
505 20th Street N.
Suite 1220-1157
Birmingham, AL 35203
T: (205) 983-2017
E: Ramon.Martin@LegalJusticeMatters.com


The Sullivan Law Firm, LLC
555 Iroquois Street
Chickasaw, AL 36611
T: (251) 268-9292
E: Sullivanlue79@gmail.com
   Esullivan2007@gmail.com